## WILLIAM GROTH, PROSECUTOR, v. BOROUGH OF MAYWOOD AND CITY OF HACKENSACK, DEFENDANTS.

Submitted February 1, 1930—Decided July 1, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutor, *Morrison, Lloyd & Morrison.*

For the defendant city of Hackensack, *Mackay & Mackay* (*Howard Mackay,* of counsel).

PER CURIAM.

This writ of *certiorari* brings up for review a contract in writing between the borough of Maywood and the city of Hackensack, dated March 5th, 1923, wherein and whereby the borough of Maywood agreed for a cash payment of $23,000 to receive into its trunk sewer and dispose of the sewage from a part of the city of Hackensack, which part of the city was more particularly described in the contract, the contract being entered into pursuant to an ordinance enacted by the Hackensack improvement commission (now the city of Hackensack), which ordinance, however, is not brought up for review by this writ.

Looking at the record it appears that the sewer and disposal plant was originally constructed by Maywood in 1916 at a cost of about $54,000; that it was estimated that in 1923 (the year in which the contract now in question was executed) the cost of the construction of the sewer and disposal plant would represent an expenditure of $81,200, and it was this plant that the city of Hackensack obtained for use in part.

The main point argued by the prosecutor is that the contract is illegal because it purports to bind the borough of Maywood in perpetuity and was an act of gross indiscretion upon the part of the municipality of Maywood.

The prosecutor (a resident and taxpayer) argues that the contract, being in perpetuity, should be condemned as beyond the powers or as a gross abuse of the powers of the municipality conferred by the Home Rule act. As will be seen the Home Rule act gave in express terms the power to make a contract but was silent as to the duration of the contract.

The agreement was entered into between the two municipalities by virtue of article 21, section 7 of the Home Rule act (*Pamph. L.* 1917, *p.* 400), which provides: "The governing body of any municipality may contract with the governing body or bodies of one or more other municipalities." Subdivision B: "To receive and care for or dispose of the sewage of such other municipality or municipalities; or (C) to have its sewage received and disposed of by any other such municipality or municipalities." Section 1 of this article 21

provides that such a contract may be provided for by ordinance.

It is by no means clear that the contract made pursuant to such statutory authority is to be condemned because without express limitation as to time. The territory to be served by this sewer was limited in extent and no doubt that was taken into account when the contract was made. The original cost of the plant of course was known; of course its capacity was known, and no doubt its unused capacity was known, and these things all had a bearing upon the terms of the contract. No doubt it was contemplated that as time went on additional expenditures would have to be made for upkeep and perhaps for extensions, but that, we suppose, was considered to be counter-balanced by the fact that the money was paid at once to Maywood and from that time forward the money was either being used or was increasing in amount by accumulations of interest.

But apart from all that, we think that we are bound to say that this prosecutor cannot·now be heard to challenge the validity of this contract, because of laches. The plain implication from the record is that since the execution of the contract in March, 1923, the prosecutor knew, or is deemed to have known, all about the matter, not only as to the making of the contract, but as to what was being done pursuant thereto. It appears without dispute that the prosecutor, with this knowledge, stood by for seven years and made no complaint or attempt to review the ordinance, or the contract, and meanwhile has permitted Maywood to have the use of the $23,000 which was paid to it by the taxpayers of the city of Hackensack, and has permitted Maywood to expend $2,600 of this fund for improvements on the plant, &c.

It seems to us that the mere statement of the matter shows the prosecutor to have been in laches; and we think that since his delay in applying for the writ has resulted in the expenditure of public moneys and the altered situation of the parties, the writ must be dismissed, with costs, and it is so ordered.